RALPH T. FRENCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
French v. Commissioner
Docket No. 19352-91
United States Tax Court
T.C. Memo 1992-395; 1992 Tax Ct. Memo LEXIS 417; 64 T.C.M. (CCH) 155; July 15, 1992, Filed *417 Decision will be entered under Rule 155. For Ralph T. French, pro se. For Respondent: LeAnn Drummond. PAJAK
PAJAK
MEMORANDUM OPINION PAJAK, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency of $ 4,732 in petitioner's 1988 Federal income tax. After a concession, [1] the only issues the Court must decide for 1988 are: (1) Whether petitioner properly reported his disability retirement income; (2) whether petitioner's farm expenses in the amount of $ 8,609 were incurred in an activity engaged in for profit; (3) whether petitioner is entitled to a $ 3,674 loss carryover; (4) whether petitioner is entitled to deduct rental expenses in the amount of $ 496; and (5) whether there is a computational error which must be taken into account in the Rule 155 computation. *418 For convenience, we have combined the findings of fact and opinion. Some of the facts have been stipulated and are so found. Petitioner resided in Calvin, Oklahoma, at the time he filed his petition in this case. Disability Retirement Benefits
On April 2, 1984, petitioner Ralph T. French (petitioner) applied for disability retirement benefits with the Office of Personnel Management (OPM). On May 9, 1984, the OPM notified petitioner that his application for disability retirement benefits was dismissed because of his failure to timely file. On July 23, 1985, the OPM formally dismissed petitioner's claim because it was untimely, and because petitioner had failed to establish grounds for a waiver of the limitations period. On November 21, 1985, the presiding official of the Merit Systems Protection Board (MSPB) reversed the OPM's dismissal. The MSPB's full board reversed its presiding official, and petitioner appealed to the United States Court of Appeals for the Federal Circuit. The Federal Circuit vacated and remanded the MSPB's decision, and petitioner was allowed to file his claim for disability retirement benefits. French v. Office of Personnel Management, 810 F.2d 1118 (Fed. Cir. 1987). *419 Pursuant to the Federal Circuit decision, petitioner received a lump sum disability retirement benefit in the amount of $ 173,142.67 from the OPM in 1988. Petitioner's original contributions to the OPM retirement program totaled $ 4,878. Petitioner reported on his 1988 Federal income tax return that the taxable portion of his disability retirement benefits was $ 167,142.67. When asked how he arrived at the taxable portion of his disability retirement benefits, petitioner responded: A Well, that is exactly $ 6,000 less than that $ 173,142.67. Q And how did you decide that it should be $ 6,000? A Well, when I sat down making up this tax return, I decided I should deduct something for the cost of obtaining the 173,142. Q Did you consider in that calculation any of your employee contributions to the Office of Personnel and Management? A No. I didn't know what to do with that, and I got to looking at the tax instructions, and I -- Q Couldn't figure it out? A -- couldn't figure out what to do with it, so I decided to sort of forget it and -- Respondent determined that the taxable portion of petitioner's disability retirement benefits was $ 168,264.67 and that *420 petitioner underreported his disability retirement benefits by $ 1,122. This amount represents the difference between petitioner's original contributions of $ 4,878, and the $ 6,000 claimed by petitioner. Section 212(1) provides that: "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the production or collection of income". Therefore, if petitioner incurred costs during 1988 to obtain his disability retirement benefits, such costs would be deductible under section 212(1). Sec. 1.212-1(a)(1), Income Tax Regs.; cf. Rev. Rul. 87-102, 1987-2 C.B. 78. Petitioner has the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Up to the time of the Federal Circuit's January 21, 1987, opinion, petitioner was pro se. In deciding whether or not petitioner incurred any legal costs in obtaining his disability retirement benefits, we must take into account the fact that the Federal Circuit remanded the case to the MSPB with instructions to make sure that petitioner had counsel. French v. Office of Personnel Management, supra at 1120. *421 Petitioner testified in support of his $ 6,000 deduction. On his return, he stated that the $ 173,142.67 was not willingly paid. The Federal Circuit's opinion was dated January 31, 1987. The efforts to collect continued until payment was made in October, 1988. We are not obligated to accept petitioner's self-serving testimony as gospel. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). However, we may make an estimate of the amount of the deduction to which petitioner is entitled, if we conclude that there are deductible expenses which he incurred. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). In light of petitioner's statements and the Federal Circuit's opinion, we find that during 1988 petitioner incurred $ 5,000 of deductible legal expenses in securing his disability retirement benefits. Sec. 212(1). This miscellaneous itemized deduction is allowed only to the extent that it exceeds 2 percent of adjusted gross income. Sec. 67(a) and (b)(2). Farm Expenses
Respondent determined that petitioner was not entitled to deduct $ 8,609 of farm expenses because petitioner's farm activities were not entered into for profit. *422 The test to determine whether an activity is engaged in for profit is whether the individual is engaged in the activity with "the actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Although the taxpayer's expectation of profit need not be reasonable, the taxpayer must have entered into the activity, or continued the activity, with the objective of making a profit. Sec. 1.183-2(a), Income Tax Regs.
On his 1988 Federal income tax return, petitioner reported the following income and expenses related to his farm operations: Farm Income
Sale of geese and ducks
$ 120.50
Sale of puppies
118.00
Total Farm Income
$    238.50
Farm Expenses
Tools
$   255.11
Repairs
300.45
Taxes
107.45
Interest
1,573.94
Miscellaneous
151.63
Pesticides
24.64
Veterinarian
254.56
Feed
249.02
Duck Feed
722.37
50% P.U. Repair
99.36
50% P.U. Gas
125.50
Water Well Repair
749.50
Emergency Bldg. Repairs
3,995.94
Total Farm Expenses
$  8,609.47
Net Farm (Loss)
$ (8,370.97)
When asked to describe his farming *423 activities, petitioner testified as follows: THE WITNESS: Oh. Well, I live on five acres, 4-1/2 miles south of Calvin, Oklahoma. I have about 50 ducks and, during 1988, I think I had about 16 or 17 geese, and then I have some dogs. I used to sell lots of puppies. I tried selling house plants after I moved down here, but I didn't have any luck doing that. I think I only sold one. The determination of whether the requisite profit objective exists depends upon all the surrounding facts and circumstances of the case. Sec. 1.183-2(b), Income Tax Regs. Petitioner has the burden of proving this profit objective. Rule 142(a); Welch v. Helvering, supra. Greater weight is to be given to the objective facts than to the taxpayer's mere statements of intent. Sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., provides a list of relevant factors used in determining whether an activity is engaged in for profit. These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation *424 that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements indicating personal pleasure or recreation. No one factor, nor the existence of even a majority of the factors, is controlling. Rather, it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Beck v. Commissioner, 85 T.C. 557, 570 (1985). On this record, we conclude that petitioner has not carried his burden of proof that his farm activities were organized and operated with an actual and honest objective of making a profit under section 183. Rule 142(a). Accordingly, respondent's disallowance of farm expenses is sustained, except as allowed under section 183(b). Petitioner is entitled to deductions in the amount of $ 107.45 for taxes under section 164, and mortgage interest of $ 1,573.94 under section 163. Sec. 183(b)(1). Loss Carryover
During 1985, 1986, *425 and 1987, petitioner contends he incurred losses in the amount of $ 563.35, $ 2,944.30, and $ 133.56, respectively. Petitioner further asserts that the cumulative amount of such losses, $ 3,674.21, was properly claimed as a loss carryover on his 1988 Federal income tax return. Petitioner has the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). At trial, no evidence was presented to substantiate these losses. Assuming, arguendo, that petitioner incurred such losses, section 172(b)(1)(A) mandates that such losses be carried back 3 years before being carried forward, unless the taxpayer makes an election on the return for the respective year to relinquish a carryback under section 172(b)(3)(C). Yee v. Commissioner, T.C. Memo. 1985-379, affd. without published opinion 822 F.2d 62 (9th Cir. 1987). Petitioner filed no returns for the years 1985, 1986, and 1987, and thus no election was made on returns for those years to forgo carrybacks for each of those years. Sec. 172(b)(3)(C). Petitioner presented no evidence which indicated compliance with the provisions of section 172. Generally, in the case of *426 an individual, section 165 limits a deduction for losses to losses incurred in a trade or business, in a transaction entered into for profit, or as a result of a casualty or theft loss. We also agree with respondent that petitioner has not met the requirements of section 165. On this record, we uphold respondent's disallowance of the $ 3,674.21 loss carryover. Rental Expense Deduction
We next address the issue of whether or not petitioner is entitled to rental deductions in the amount of $ 496.19. Petitioner had rental income in the amount of $ 500. Section 212(2) provides that: "In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income". We found petitioner's testimony regarding his Kansas City rental property to be credible. Accordingly, we hold that the amount of $ 496.19 of rental expenses was properly deductible by petitioner under section 212(2). Computational Error
The notice of deficiency was calculated using round numbers, and we generally shall do the same here. *427 Petitioner reported a combined net farm/rental loss and net operating loss carryover on his 1988 Federal income tax return in the total amount of $ 10,263. When petitioner calculated this figure he mistakenly reduced the total of net farm/rental loss and net operating loss carryover by his interest and dividend income. In the notice of deficiency, respondent determined adjustments to petitioner's farm/rental activities and net operating loss carryover in the total amount of $ 12,779. Included in that amount is an error which should be factored into the Rule 155 computation. Specifically, $ 1,778, of the $ 12,779 disallowance represents petitioner's taxable interest and dividend income, which he correctly reported as income, but incorrectly offset against his net loss from farm/rental loss and net operating loss carryover. Accordingly, petitioner is entitled to an adjustment in his favor in the amount of $ 1,778 to correct the computational error. Decision will be entered under Rule 155. Footnotes
1. At trial, respondent conceded that petitioner was entitled to a $ 3,000 capital loss deduction for the year in issue. This is the maximum capital loss deduction which could be allowed. Sec. 1211(b).↩